## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **CYNTHIA SMALLEY,** | § | |
| **Individually and on Behalf of All** | § | |
| **Others Similarly Situated,** | § | |
| | § | |
| **Plaintiff** | § | **CIVIL NO. 16-cv-00180** |
| | § | |
| **V.** | § | |
| | § | **JURY TRIAL** |
| **UNION PACIFIC RAILROAD COMPANY,** | § | |
| | § | |
| **Defendant** | | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND
### APPLICATION FOR CLASS ACTION CERTIFICATION

TO THIS HONORABLE COURT:

COMES NOW Plaintiff, Cynthia Smalley, Individually and on Behalf of All Others Similarly Situated, complaining of Defendant, Union Pacific Railroad Company, and would respectfully show the following:

### PARTIES

### PLAINTIFF

1.   Plaintiff, Cynthia Smalley, is an adult female and is a resident of Anderson County, Texas. She is owner of the property described as 1133 South Magnolia Street, Palestine, Texas 75801.

### DEFENDANT

2.   Defendant, Union Pacific Railroad Company, is a Delaware corporation doing business in Texas with its principal place of business in a State other than Texas.

3.  Defendant Union Pacific Railroad Company may be served with process through its registered agent for service of process, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Dallas County, Texas 75201 (Telephone: 214-979-1172).

**OVERVIEW OF THE FACTS IN SUPPORT OF**
**JURISDICTION AND VENUE**

4.  This is a case of first impression. Plaintiff and the Class she represents are owners of real estate that is adjacent to tracks owned and operated and under the control of Defendant Union Pacific Railroad Company.  Plaintiff and the Class she represents have suffered damages based on the conduct of Defendant Union Pacific Railroad Company's deliberate acts of commission and omission. Plaintiff and the Class she represents seek compensation for the "taking" of their property by the Defendant, and a mandatory injunction ordering the Defendant to take action to abate the ongoing damage to real property owned by class members.

5.   In Union Pacific Railroad Company's 2017 fast facts, "Union Pacific's Texas Heritage," Defendant states that from 2008 through 2017, it has invested approximately $34 billion in its network and operations to support America's transportation infrastructure. To the contrary this case will show that the Defendant has not inspected, cleaned, repaired or replaced its culverts under the tracks and the water drainage alongside its tracks for many years.

6.  Union Pacific Railroad Company states in the "fast facts" that it maintains an invested presence in the State's major cities, all of the State's gulf ports, at international rail gateways, and across the Lone Star State. In 2016: 1,161,107 railcars originated in Texas and 944,032 railcars terminated in Texas.

7.   Union Pacific Railroad Company has a less than pure motive for not repairing its culverts and drainage alongside its berms. In order for the Defendant to do the repairs and

modifications necessary, it has to issue and put out "blue flags," which is a notice to all engineers and railroad employees that work on a main track is underway and all train traffic must come to a stop and wait. As a result, the Defendant is not able to move railcars and freight which is necessary for profits to the Defendant and its shareholders.

8.  Notwithstanding the Union Pacific Railroad's self-proclaimed commitment to safety and to the interest of the communities in which it operates, this case is about corporate profit at the expense of the Class members that own property adjacent to its tracks.

9.  Plaintiff, and the Class that she represents, asks that the Defendant be ordered, not only to pay for the land that it has taken by repetitious backup and retention of surface waters alongside its tracks, but also that the Defendant be ordered to clean, remove and/or enlarge all its culverts under the land alongside its tracks on its right of ways (berms) next to all Class members' property.  Plaintiff believes that the cost to comply with the Court's injunction will be in the millions of dollars. Alternatively, Plaintiff and the Class that she represents, request that if Defendant, Union Pacific Railroad Company, refuses correct the conditions created solely by its acts of omission and commission, that injunction be issued directing the Defendant to remove its tracks and level the ground along its right of ways to allow for the proper flow of surface waters across property owned by the Class.

## JURISDICTION

## SUBJECT MATTER JURISDICTION

10.  There is diversity of citizenship among and between the parties to this civil action, and the amount in controversy, exclusive of interest and costs, exceeds SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

11.  Jurisdiction in this United States Judicial District exists under 28 U.S.C. Section 1332.

12.  Jurisdiction also exists under the provisions of the Class Action Fairness Act under 28 U.S.C. § 1332(d).

### PERSONAL JURISDICTION

13.  Defendant Union Pacific Railroad Company is subject to this Court's personal jurisdiction under Tex. Civ. Prac. & Rem. Code Ann. §17.042 (Texas Long-Arm Statute).

14.  Union Pacific Railroad Company, according to its 2017 "fast facts" has 6306 miles of track in Texas with an annual payroll of 692.3 million dollars, and with a capital investment in Texas of 825 million dollars, with 7,315 employees. Union Pacific Railroad Company states that it had in 2017, a capital investment in Texas of 825 million dollars and additionally supports jobs in the Texas economy of 65,835.  Union Pacific Railroad Company has 32,100 route miles across 23 states in the Western two-thirds of the United States of America.  Union Pacific Railroad Company trades on the New York Stock Exchange as UNP.

### GENERAL AND SPECIFIC JURISDICTION

15. Defendant, Union Pacific Railroad Company, is subject to this Court's general and specific jurisdiction because it is registered to do business in Texas, does substantial business in Texas, contracts with Texas residents to perform contracts in whole or in part in Texas, recruits Texas residents for employment, or committed the tort in question in whole or in part in Texas, and has purposely availed itself of the rights and privileges of conducting business in Texas.

### VENUE

16.  Based upon the Union Pacific Railroad Company Track Maps, Union Pacific Railroad Company is believed to have tracks, sidetracks, switches, highway and street crossings,

overpasses and underpasses and water and drainage culverts and management and repair facilities in many, if not all the 43 counties that comprise the United States Federal Courts for the Eastern District of Texas.  Plaintiff believes, and after discovery will have good reason to believe, that Union Pacific Railroad Company picks up and delivers materials, chemicals, and freight and has employees and solicits employment from residents of the 43 counties of the Eastern District of Texas.

17.  Venue is proper in the Eastern District of Texas because this Court has personal jurisdiction over Defendant Union Pacific Railroad Company in this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and continue to occur in this District.

18.  Therefore, jurisdiction in this Judicial District exist under 28 U.S.C. Section 1391. Jurisdiction also exists under the Class Action Fairness Act under 28 U.S.C. § 1332(d).

## INTRODUCTION OF CLAIMS

19.  Plaintiff's claims arise out of a heavy rain that occurred during the early morning hours of April 30th, 2016.  Plaintiff's claims are not limited to the April 30th, 2016, rains and resulting damages, but also for damages that continue to occur with each heavy rain, and caused damage to the Plaintiff. Plaintiff brings these claims for herself and for such other class or subclass of persons, that share a commonality of property ownership adjacent to railroad tracks and/or street crossings, which are required to be equipped with culverts under the tracks and with water drainage ways alongside the berms that hold up the tracks.

20.  The property interests of the Plaintiff and for the Class which she represents are interests in real estate. Defendant, Union Pacific Railroad Company has had, and continues to have, a duty described herein below to maintain, clean, clear, replace and enlarge water drainage

culverts and drainage alongside the tracks to prevent water from backing up and damaging their property, and flooding their lands and creating pools and ponds of standing water which harbor disease and mosquitoes, creating public and private nuisances and nuisances per se.  Unless this court grants a temporary injunction and upon final trial makes it a permanent injunction ordering the Defendant Union Pacific Railroad Company to clean, replace, restore, repair and enlarge drainage culverts and right of ways, the Plaintiff and the Class she represents will continue to suffer damages to their property and their safety and their quality of life.

21.  Plaintiff and the Class she represents have a statutory entitlement to injunctive relief and the award of attorneys' fees.

22.  Factual allegations to comply with *Twombley* requirements:  The Plaintiff herein provides in good faith the factual allegations known to her or relied upon by her in her investigation of this case and the Timber Drive case allegations. The matters set forth herein are not to be necessarily construed to be in detail or in chronological order.  Rather, the Plaintiff intends that this pleading provide the Defendant with sufficient fair notice of the general nature and substance of the Plaintiff's allegations and claims for relief, and further to demonstrate that the Plaintiff's claims have factual plausibility.  Whenever the Plaintiff pleads factual allegations "upon information and belief," the Plaintiff is pleading that the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation and discovery.

23.  Palestine and Anderson County, Texas have a rich history with railroads. The Defendant, Union Pacific Railroad Company and its predecessor railroads date back to the mid-1800s.  The City of Palestine, Texas, welcomed the railroads to build a large infrastructure, including a car shop for the repair of railroad cars and multiple tracks for putting together trains

to comply with shipping manifests that allowed for cars to be "cut" at designated locations for industry along the train lines. Most of the other counties in the Eastern District of Texas have a similar history.

24.  This design required large areas to be leveled to construct the parallel tracks and also to provide for crossings of public streets.  This design required that rainwater and runoff water be planned for, managed and maintained, for the safe operation of the trains and for traffic on public streets, and private property interests adjacent to their tracks.

25.  The City of Palestine, and based upon knowledge and belief, other cities within network of the Union Pacific Railroad Company's tracks and the Federal Railroad Administration require(d) the Union Pacific Railroad Company to maintain culverts and the right of ways along tracks to protect against flooding caused by heavy rains and the accumulation of surface water runoff, which eventually would run into natural creeks and streams.

26.  Upon information and belief, it appears that the Union Pacific Railroad Company benefited by not having to pay for land and/or improvements using these locations and could install culverts under the tracks to collect and divert water into the existing watershed.  In low-lying areas, the Union Pacific Railroad Company could build the berm for the tracks to the height necessary, and manage the runoff water by maintaining the natural fall line of the topography and constructing culverts necessary to divert the water along the fall line of the berms holding up its tracks.

27.  This type of construction required the Union Pacific Railroad Company to constantly monitor and control vegetation and buildup of runoff residue and debris in culverts and on the right of way to prevent flooding. The Union Pacific Railroad Company also constructed its own network of suspended high voltage electric power lines for communication and powering its

signals and crossing gates. The washout of a telephone pole could result in downed wires posing a risk of electrocution and interruption of train communications.

28.  Upon the installation of large fiber optic cables within the berms of the Union Pacific Railroad Company tracks, the overhead power lines were abandoned and the Railroad became less concerned with inspection and maintenance of the water flow alongside and under its tracks throughout its entire network.  The duty remained, but the Defendant no longer had a corporate interest in the inspection of its track's drainage.

**PLAINTIFF CYNTHIA SMALLEY**

29.  On the evening of April 29th and the early morning of April 30th, 2016, heavy rains fell in Palestine and Anderson County, Texas, and included 1133 South Magnolia Street.

30.   The rain fell in the darkness.  The house sits on a long lot that fronts Magnolia Street and the back abuts the Old South Lead, Main Track 101 of the Union Pacific Railroad, which sits on top of an  approximately 25 foot tall berm.

31.  At the base of the berm is a drain that was constructed by Defendant, or its predecessors, and is believed to be approximately three feet in diameter.  The drain is located between the Colorado Street crossing to the North and the Jolly Street crossing to the South.

32.  In good faith and belief, Plaintiff believes the culvert to have been installed, circa 1930's.

33.  The culvert has never been properly maintained and properly cleaned, nor has the water flow line running parallel to the track at the bottom of the berm, evidenced by two large trees that have grown up alongside the culvert that are blocking it, as well as the accumulation of leaves, discarded railroad rails and cross-ties, vines and dense vegetation.  The discarded track remnants showed that since the installation of the culvert, track crews had fixed the track and

discarded old material (rails and ties,) and instead of inspecting, cleaning and/or enlarging the drainage, the Defendant made it worse.  The Defendant ignored the danger that existed directly below it.



34.  The culvert was obstructed with dirt, debris, trash, dead tree limbs and tree roots, and acted like a stopper that obstructed the flow of water, creating a dam that caught all of the heavy rain and caused it to back up into the Smalley house.



35.   The Smalley house was knocked off its pier and beam foundation. All the contents of the house were lost in the flood waters and were not salvageable.

36.   What remained of the house was not habitable and mold and mildew quickly set in, ruining any hopes of saving the house.

37.   Cynthia Smalley lost the value of her house which had been in the Smalley family for generations and was special and unique.

38.   Even if Plaintiff had the funds available to reconstruct the house on her property, she still would be without an adequate remedy of the law, because the property will flood again until such time that the Defendant herein is ordered to clean and replace the culverts, and clean and clear and remove trees and vegetation and obstructions, and the Defendant's debris material including heavy cross ties and railroad irons for which only the Defendant railroad is equipped.

39. Plaintiff will show that because of Union Pacific Railroad Company's failure to maintain the drainage of the culverts and the right away of tracks owned by them, a stigma has attached to the property owned by Cynthia Smalley. Effectively, the Defendant, Union Pacific Railroad Company, has taken the Plaintiff's property without compensation, for which she sues, for the additional value of their house and property that now has been stigmatized by the flood and resulting damage, that was created by Defendant, Union Pacific Railroad Company, and its failure to respond to the statutory and, common law duty imposed upon it to inspect, maintain and protect the culverts and right of ways along its trackage, and to prevent and eliminate statutory and common-law nuisances and nuisances *per se* along its railroad lines.

40. The Defendant, Union Pacific Railroad Company's failure to act, even after notice was provided them shortly after the April 30th, 2016 flood, has resulted in additional damage to the Plaintiff, for which she sues. Even though the Defendant was given notice of the damages sustained by the Plaintiff, after the April 30th rains and rising water conditions, the Defendant has failed to take any action. Each subsequent rain has backed up a pool of water into the Plaintiff's property, resulting in additional damages.

41. Roy Smalley, Cynthia Smalley and Robert Gore, father-in-law to the Smalleys, met after the April 30th, 2016 flood with representatives of the Union Pacific Railroad Company on the Smalley property.

42. On June 6, 2016, Robert Gore spoke with Ms. Samantha Rickard, Union Pacific Railroad Company's Risk Management Representative, about the loss of the home and the culvert.

43.  On June 10, 2016, Robert Gore spoke with Samantha Rickard again about the loss and she sent an email to Mr. Gore to talk with Mr. Jim Greelis, Senior Risk Management Specialist for Defendant.

44.  On June 14, 2016, Mr. Jim Greelis sent a fax to the Union Pacific Railroad Company's Palestine Railroad Superintendent's office for the Roy Smalley family to pick up at the Union Pacific Building in Palestine, Texas.

45.  Subsequently, Mr. Gore and Roy Smalley met with Mr. Jim Greelis, along with other Union Pacific Railroad Company employees.  Defendant's representatives admitted that the culvert was in a state of disrepair and defective and added that the Union Pacific Railroad Company's regulations required that the culvert be at least 6 feet in diameter.  The Defendant has regulations to inspect and clean culverts, especially near those street crossings.

46.  Notwithstanding, Defendants have taken no action to pay the Plaintiff's loss and make the necessary changes to the culvert to protect the Plaintiff from future flooding and the pooling and standing of water.

47.  After a recent rain in the spring of March, 2018, Mr. Gore visited the Smalley house several days after the rain and discovered standing water.



**DEFENDANT UNION PACIFIC RAILROAD COMPANY
VIOLATED THE FEDERAL RULES AND REGULATIONS**

48.  The U.S. Code of Federal Regulations prescribed the minimum safety requirements for the conduct of Defendant Union Pacific Railroad Company at all material times.

49.  Compliance with the minimum requirements of the U.S. Code of Federal Regulations by Defendant Union Pacific Railroad Company would have prevented the failure of its drainage system and culvert as well as the flooding.

50.  Defendant Union Pacific Railroad Company did not comply with the minimum requirements of the U.S. Code of Federal Regulations.  For example:

(A)    Defendant Union Pacific Railroad did not keep its water carrying facility or culvert free of obstruction to accommodate expected water flow as required by 49 C.F.R. §213.33.

(B)    Defendant Union Pacific Railroad Company did not maintain its water carrying facility or culvert to accommodate expected water flow as required by 49 C.F.R. §213.33.

(C)    Defendant Union Pacific Railroad Company did not regularly inspect its culvert as required by 49 C.F.R. §213.233(b).

(D)    Defendant Union Pacific Railroad did not inspect its culvert as soon as possible after prior severe storms as required by 49 C.F.R. §213.239.

(E)    If Defendant Union Pacific Railroad ever inspected its culvert during the relevant time period, it did not immediately initiate remedial action as required by 49 C.F.R. §213.233(d).

(F)    If Defendant Union Pacific Railroad ever inspected its culvert, based upon information and belief, it did not use qualified persons to inspect its culvert as required by 49 C.F.R. §213.

### DEFENDANT UNION PACIFIC RAILROAD COMPANY VIOLATED ITS OWN SAFETY RULES AND POLICIES

51.  Defendant Union Pacific Railroad had created safety plans, rules, or standards under 49 C.F.R. §213 to show it was complying with the U.S. Code of Federal Regulations.

52. These safety plans, rules, or standards included, but were not limited to, Defendant Union Pacific Railroad Company's Engineering Track Maintenance Field Handbook (a/k/a Field Handbook), its Maintenance of Way Rules, its General Code of Operating Rules, its Guidelines for Railroad Grade Separation Projects, and its Engineering Standards.

53.  Defendant Union Pacific Railroad Company's compliance with these safety plans, rules, or standards would have prevented the failure of its drainage system and culvert and the flooding.

54.  Defendant Union Pacific Railroad Company did not comply with its own safety plans, rules, or standards during the relevant time period.  For example:

(A)     Defendant Union Pacific Railroad Company did not keep its culvert and waterways clear of debris and obstructions that would hinder water flow through its culvert as required by Sections 1.2.1, 1.3.3, and 6.7 of its Field Handbook as well as Section 46.10.1 of its Maintenance of Way Rules.

(B)     When trimming trees along its right of way, Defendant Union Pacific Railroad Company discarded this material on the slopes of its railroad berm where it would wash into its drainage ditches and block drainage through its culvert, which is prohibited by Section 46.10.2 of its Maintenance of Way Rules.

(C)     Defendant Union Pacific Railroad Company did not make sure that its culvert was large enough to handle the maximum anticipated water flow as required by Section 1.3.3 of its Field Handbook.

(D)     Defendant Union Pacific Railroad Company did not enlarge its culvert to handle the maximum anticipated water flow as required by Section 1.2.1 and 1.3.3 of its Field Handbook.

(E)     Defendant Union Pacific Railroad Company did not make sure that there were enough culverts at this location to handle the maximum anticipated water flow as required by Section 1.3.3 of its Field Handbook.

(F)     Defendant Union Pacific Railroad Company did not install additional or larger culverts to handle the maximum anticipated water flow at this location as required by Section 1.3.3 of its Field Handbook.

(G)     Based upon information and belief, Defendant Union Pacific Railroad Company did not perform a complete hydrologic and hydraulic study of its drainage system and culvert as required by Section 4.5 of its Guidelines for Railroad Grade Separation Projects.

(H)     Defendant Union Pacific Railroad Company did not comply with the applicable hydraulic criteria for its drainage system and culvert as required by Section 4.5.2 of its Guidelines for Railroad Grade Separation Projects.

(I)     When there was an indication of a storm or high water that may cause an unsafe condition, Defendant Union Pacific Railroad Company did not keep informed of current weather forecasts or conditions and determine how high the water would crest above or below the flood stage as required by Section 8.9.10 of its Field Handbook.

(J)     When there was an indication of a storm or high water that may cause an unsafe condition on this occasion, Defendant Union Pacific Railroad Company did not place a watchman at this culvert as required by Section 46.2 of its Maintenance of Way Rules.

(K)     During the storm in question, Defendant Union Pacific Railroad Company did not patrol this section of track as required by Section 46.2.1 of its Maintenance of Way Rules.

(L)     During heavy rainfall or runoff, Defendant Union Pacific Railroad Company did not monitor its culvert to make sure that it could handle the flow of water as required by Section 1.2.1 of its Field Handbook.

(M)     When washouts occurred along its right of way during previous heavy rainfall runoffs, Defendant Union Pacific Railroad Company did not determine whether its culvert was obstructed and remove the obstructions as required by Section 1.3.3 of its Field Handbook.

(N)     Defendant Union Pacific Railroad Company did not control the vegetation along its right of way, as required by Section 6.2.1 of its Field Handbook, so the vegetation would not interfere with its employees performing their normal inspection duties.

(O)     Defendant Union Pacific Railroad Company did not conduct regular visual inspections of its culvert as required by Sections 8.5 and 8.6 of its Field Handbook.

(P)     After previous severe storms, which might have damaged its culvert, Defendant Union Pacific Railroad Company did not conduct special inspections to evaluate the condition of its culvert and the volume of excessive drift and debris in its culvert obstructing water flow as required by Sections 8.9, 8.9.9, and 8.9.10 of its Field Handbook.

(Q)     Defendant Union Pacific Railroad Company did not mark its culvert with a sign beside its railroad tracks, as illustrated in Standard Drawing 0507B of its Engineering Standards, so that its employees could find, monitor, and inspect its culvert.

(R)     If Defendant Union Pacific Railroad Company's employees ever inspected its culvert during the relevant time period, they did not notify the train dispatcher or

other appropriate authorities of the defective or unsafe condition of the culvert as required by Section 6.21.1 of its General Code of Operating Rules.

(S)     If Defendant Union Pacific Railroad Company ever inspected its culvert during the relevant time period, it did not take appropriate remedial action as required by Section 8.5.9 of its Field Handbook.

(T)     If Defendant Union Pacific Railroad Company ever inspected its culvert, based upon information and belief; it did not use qualified persons to inspect its culvert as required by Section 8.3.1 of its Field Handbook.

(U)     Defendant Union Pacific Railroad Company did not keep its drainage system and culvert in safe condition as required by Section 1.24 of its General Code of Operating Rules.

## DEFENDANT UNION PACIFIC RAILROAD COMPANY VIOLATED THE CITY OF PALESTINE'S CODE OF ORDINANCE SECTIONS 94-174

55.   The acts or omissions of Defendant Union Pacific Railroad Company as described above obstructed the drainage of the City of Palestine in violation of Section 94-174 of the City of Palestine Code of Ordinances.

56.   Moreover, the condition of Defendant Union Pacific Railroad Company's drainage system and culvert on its right-of-way were not maintained by Defendant Union Pacific Railroad Company at all material times as required by Section 40-152 of the City of Palestine Code of Ordinances.

57.   Furthermore, the existing creeks and drainage channels on Defendant Union Pacific Railroad Company's right of way did not remain as open channels at all material times as required by Section 40-152 of the City of Palestine Code of Ordinances.

58.  In addition, Defendant Union Pacific Railroad Company failed to keep its drainage system and culvert on its right-of-way free from stagnant and toxic water, rubbish, and trash as required by Section 46-54 of the City of Palestine Code of Ordinances.

## APPLICATION FOR CLASS CERTIFICATION

59.  Plaintiff seeks to certify this action as a class action on behalf of all persons who own real property that abuts and adjoins a Union Pacific Railroad Company track, right of way and/or street crossing that have sustained flood and/or rising water and/or standing surface water. Plaintiff, meeting the definition discussed herein above, seeks to be appointed as representative of the following class:

(A)  The applicants for class action certification define the Class to include all persons living in one of the following counties that owns properties adjacent to a track or  side track of Defendant owned property, including Defendant's offices, sub offices, signals, control stations, tracks or side tracks, train switches, switchyards, turnstiles, car shops, industrial switches for spur tracks to feed or receive freight from industry; that is within a floodplain designated by the United States, a State, County or city, jurisdiction or certificated municipal water district, municipal utility, water resource or underground water district, or municipal or county water district or area designated by under  FEMA or the Nation Flood Insurance Program as an area with any flood zone [100 year, 300 year and any other category defining flood predictability, referred to by example, but not intended to be by way of limitation; that is next to any property owned or operated by the Defendant, Union Pacific Railroad Company, any  highway or street crossing of any track or side track owned or operated by defendant Union Pacific Railroad whether it be overpassed or underpassed, drained by or adjacent  to any  drainage culvert installed

by the railroad, and/or any land that is adjacent to or drains water alongside or under any berm that that is designed to drain storm or surface runoff water away from Defendant's railroad  or any crossing by Defendant's rails or property of any roadway, including but not limited to any Interstate, U.S. Highway, County Farm to Market, County Road, or any street, alley, greenway, pedestrian, bicycle, wildlife or other path designed for travel either for use,  necessity or convenience for public or private thoroughfare.

(B)   The class includes any person within the Eastern District of Texas where Union Pacific Railroad Company operates:

The Beaumont division:  Hardin, Jasper, Jefferson, Liberty, Newton and Orange counties;

The Lufkin Division:  Angelina, Houston, Nacogdoches, Polk, Sabine, Shelby, San Augustine, Trinity and Tyler counties;

The Marshall division:  Camp, Cass, Harrison, Marion, Morris and Upshur counties;

 The Sherman Division:  Collin, Cook, Denton, Grayson, Delta, Fannin, Hawkins and Lamar counties;

The Texarkana Division: Bowie, Franklin, Titus and Red River counties; and

The Tyler Division:  Anderson, Cherokee, Greg, Henderson, Panola, Rains, Rusk, Smith, Van Zandt and Wood counties.

According to the 2010 United States Census figures, more than 3.5 million people make their homes in the Eastern District of Texas.

The Beaumont Division, on the Texas Gulf Coast is the locale to many oil gas industries and large  petrochemical  plants.  There  are  four  seaports  in  the  Beaumont

Division. The Port of Beaumont serves as a major port for the transportation of military equipment. These industries are large users of the shipment of freight by Union Pacific Railroad.

The Lufkin Division is dominated by the lumber and forest products industry, which are large users of the shipment of freight by Union Pacific Railroad.

The Tyler, Marshall and Texarkana Divisions are populated by industries related to the East Texas oil field and agricultural interests and also a variety of businesses, including light manufacturing and high-tech companies. This Division is a large user of the shipment of freight by Union Pacific Railroad.

The Sherman Division includes Collin and Denton Counties, including the city of Plano, have become the corporate headquarters for a number of large companies, and is a large user of the shipment of freight by Union Pacific Railroad.



60.  This action meets the requirements of The Class Action Fairness Act of 2005 and of Federal Rule 23 and is certifiable as a class action for the following reasons:

(A)  The Class includes thousands of members and is so large that joinder of all its members is impracticable.

(B)  The members of the classes are so numerous as to make joinder impractical. Plaintiff's claims are typical of the claims of the Class proposed herein.  Defendant's conduct toward Plaintiff is, in its essence, identical to their conduct toward other members of the Class.  The class can be organized as the main class that is entitled to an injunction as a result of having suffered damage to the real property interest, or will suffer damage to their real property interest and have suffered from floods, rising  water and/or standing water from the nuisance created by the Defendant, Union  Pacific Railroad Company, and/or its breach of duty and/or  its legal requirement to comply with rules, regulations and/or duties to keep its right of ways and drainage culverts properly, cleared, inspected, enlarged, cleaned and/or replaced.

61.  Subclasses of the group can be created consisting of those persons who have had rising water damage from heavy rains that has resulted in a structure(s) they own to be uninhabitable (taken). Damages can be easily quantified by using mass appraisal data collected by units of government that are allowed to impose an ad valorem tax and with the use of zoning maps and land use restriction maps of city and governmental agencies wherein the subclass resides.

62.  Additional subclass(es) include those persons whose property interest has been flooded one or more times wherein a "stigma" has attached to the real property interest such that Defendant should pay fair market value for the real property and structure(s).

63.  Plaintiff's claims are typical of the claims of the Class proposed here. Defendant's conduct toward Plaintiff is, in its essence, identical to their conduct toward other members of the Class and implicates the same set of concerns in both settings.

64.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has no interests antagonistic to the interests of the Class and is committed to the vigorous representation of the Class and prosecution of this case.  Plaintiff has also retained counsel in this case who are experienced in class action litigation.

65.  Certification under Rule 23(b)(1) is appropriate because the prosecution of separate actions by individual members of the Class would create a risk of:

(A)  inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct for the Defendants opposing the classes, or

(B)  adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

66.  Certification under Rule 23(b)(2) is also appropriate because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to the Class.

67.  Certification under Rule 23(b)(3) is appropriate because questions of law and fact common to the members of the Class predominate over individual questions and because the prosecution of this action on a class basis is superior to other available methods for the fair and efficient adjudication of this controversy.  In particular:

(A)    The common questions of law and fact identified above are the core issues presented by this action.  The answers to those questions will drive the litigation and resolve the liability issues under applicable case law.  There are no individual issues other than the amount of recovery to which each member of the Class will be entitled should Plaintiff prevail, which can be determined by formula and reference to public records and Defendant's records and maps which will identify the class members and their entitlement to damages.

(B)    No member of the Class has an interest in individually controlling the prosecution of a separate action, as the claims of all members of the Class are the same and certification of the Class in this action will require a determination that Plaintiff will adequately represent the interests of all members of the Class.

(C)    Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

(D)    For many of the same reasons described above, a class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of the Class is impracticable.  The losses suffered by some of the individual members of the Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.  Even if such actions were viable, the result would be a multiplicity of actions against the same Defendants, involving the same conditions created and neglected by the Defendant, Union Pacific Railroad Company, possibly in multiple jurisdictions.  Individual proceedings

would pose the risk of inconsistent adjudications. Plaintiff is unaware of any difficulty in the management of this action as a class action.

68.   **CLASS EXCLUSION**S:  Defendant and its employees; Plaintiffs and Intervenors in Cause Number 6:17-cv-653, styled *Johnson, et al v. Union Pacific Railroad Company* and state court claimants, Mr. Ostell Johnson, Mr. Ron Hurlbert and Ron O. Hurlbert, Inc., are excluded from this Class.

69.   Plaintiff states that the Class meets all requirements as proposed in the Class Action Fairness Act under 28 U.S.C. § 1332(d).

## COUNT I-NEGLIGENCE

### [PLAINTIFF HEREBY INCORPORATES BY REFERENCE ALL OF THE PRECEDING PARAGRAPHS AS IF FULLY SET FORTH HEREIN]

70.   Defendant Union Pacific Railroad Company violated the administrative regulations, city ordinances, and legislative enactment as described above.

71.   The administrative regulations, city ordinances, and legislative enactment were designed in part to prevent harm to persons and property on adjoining private land.

72.   The Plaintiff belonged to the class of persons the administrative regulations, city ordinances, and legislative enactment were intended to protect.

73.   Defendant Union Pacific Railroad Company's unexcused violation of each of the aforementioned administrative regulations, city ordinances, and legislative enactment constituted negligence per se and nuisances per se, and each or all of these violations were a proximate cause of the flood, nuisance and property damage and Plaintiff's resulting damages.

## COMMON LAW NEGLIGENCE

74.   Defendant Union Pacific Railroad Company was negligent in not keeping its culvert and its drainage system on its right of way clear of debris.

75. Defendant Union Pacific Railroad Company was negligent in maintaining its culvert and its drainage system on its right of way by:

(A)   Not protecting its culverts from accumulating debris with trash racks, resulting in rising and standing water, a public and private nuisance per se;

(B)   Not keeping its drainage system and culvert in compliance with the applicable hydraulic criteria;

(C)   Not installing a head wall, wing walls, or apron slab around its culvert to improve the hydraulic performance of its culvert;

(D)   Not repairing its culvert;

(E)   Not replacing its culvert;

(F)   Not enlarging its culvert; or

(G)   Not adding more culverts;

None of which would have unreasonably burdened or interfered with rail transportation.

76. Defendant Union Pacific Railroad was negligent in not constructing, maintaining, or modifying its 26-foot-high earthen embankment or railroad berm so natural creek, drainage, or storm waters could continue to pass through its easement without being diverted or impounded and flooding the adjoining neighborhood.

77. Defendant Union Pacific Railroad Company was negligent in inspecting its culvert and drainage system before or during the rain storm in question.

78. Defendant Union Pacific Railroad Company was negligent in not marking its culvert with a sign beside its railroad tracks so that its employees could find, observe, or inspect its culvert.

79. Defendant Union Pacific Railroad Company was negligent and created nuisances in controlling the vegetation and standing water around its culverts and side tracks, so that:

      (A)     It did not obstruct its culvert, resulting in rising and standing water;

      (B)     Its employees could conduct adequate visual inspections of its culvert.

80. If Defendant Union Pacific Railroad Company ever inspected its culverts, Defendant was negligent in hiring, training, or supervising the persons conducting these inspections.

81. Defendant Union Pacific Railroad Company was negligent in discarding its debris onto its culvert or into its drainage ditch which eventually blocked its culvert.

82. Defendant Union Pacific Railroad Company was negligent in not monitoring the water flow through its drainage system and culvert before or during the rain storm in question.

83. Defendant Union Pacific Railroad Company was negligent in not performing a complete hydrologic and hydraulic study of its drainage system and culvert during the relevant time period.

84. Defendant Union Pacific Railroad Company was negligent in failing to warn the decedents and the Plaintiff residing on South Magnolia and South Royall Streets that its drainage system was not adequate to protect their lives or property.

85. Defendant Union Pacific Railroad Company's violations of administrative regulations, city ordinances, the legislative enactment and its own safety plans, rules, and standards, and its conduct as set forth herein or otherwise, constituted negligence by act or omission, each of which was a proximate cause of the flood, nuisance, property damage, and deaths in question and Plaintiff's resulting damages.

86.  Defendant Union Pacific Railroad Company's liability for negligent acts and omissions is direct or vicarious and the doctrine of *respondeat superior* is invoked where applicable.

## NEGLIGENT UNDERTAKING

87.  If Defendant Union Pacific Railroad Company ever undertook to replace its culvert, it knew or should have known that enlarging its culvert or drainage system might be necessary to protect the Plaintiff and their properties.

88.  If Defendant Union Pacific Railroad Company ever undertook to replace its culvert, it was negligent in replacing its culvert with only one culvert or a culvert that was not large enough to safely accommodate the maximum anticipated water flow for the projected life of the culvert.

89.  The Plaintiff relied on Defendant Union Pacific Railroad Company to reasonably and adequately perform this undertaking.

90.  The negligence of Defendant Union Pacific Railroad Company in performing this undertaking was a proximate cause of the flood, nuisance, property damage, and deaths in question and Plaintiff's resulting damages.

## NEGLIGENCE PER SE

91.  Defendant Union Pacific Railroad Company violated the administrative regulations, city ordinances and legislative enactment as described above.

92.  The administrative regulations, city ordinances and legislative enactment were designed in part to prevent harm to persons and property on adjoining private land.

93.  The Plaintiff belonged to the class of persons the administrative regulations, city ordinances and legislative enactment were intended to protect.

94. Defendant Union Pacific Railroad Company's unexcused violation of each of the aforementioned administrative regulations, city ordinances and legislative enactment constituted negligence per se and nuisances per se and each or all of the violations were a proximate cause of the flood, nuisance and property damage and Plaintiff's resulting damages.

95. Defendant Union Pacific Railroad Company's violations of administrative regulations, city ordinances, the legislative enactment and its own safety plans, rules and standards and its conduct as set forth herein or otherwise, constituted negligence by act or omission, each of which was a proximate cause of the flood, nuisance, property damage and deaths in question and Plaintiff's resulting damages.

96. Defendant Union Pacific Railroad Company's liability for negligent acts and omissions is direct or vicarious and the doctrine of *respondeat superior* is invoked where applicable.

## GROSS NEGLIGENCE AND EXEMPLARY DAMAGE CLAIMS:

97. Defendant Union Pacific Railroad Company had a custom or practice of routinely neglecting its drainage systems and culverts required to protect communities along its right of way.

98. Defendant Union Pacific Railroad Company's acts or omissions as described above:

(A)    involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, when viewed objectively from the standpoint of Defendant Union Pacific Railroad Company at the time of the occurrence in question; and

(B)    Defendant Union Pacific Railroad Company nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others with actual, subjective awareness of the risks involved.

99.    Defendant Union Pacific Railroad Company's violations of administrative regulations, city ordinances, the legislative enactment and its own safety plans, rules, and standards, and its conduct set forth herein or otherwise, constituted gross negligence by act or omission, each of which was a proximate cause of the flood, nuisance, property damage, and property taking and stigma in question and Plaintiff's resulting damages which warrant the further imposition of exemplary or punitive damages.

## COUNT II-NUISANCE

## DEFENDANT UNION PACIFIC RAILROAD COMPANY VIOLATED THE TEXAS WATER CODE WHICH CREATED A STATUTORY NUISANCE

100.    The condition of Defendant Union Pacific Railroad Company's drainage system and culvert on its right of way diverted or impounded the natural flow of rainwater through the drainage basin for South Magnolia Street in violation of the Tex. Water Code Ann. §11.086. Plaintiff sues for damages, injunction and attorneys' fees.

## STATUTORY NUISANCE

## (VIOLATIONS OF THE TEXAS HEALTH AND SAFETY CODE)

101.    The conduct of the Union Pacific Railroad Company violated provisions of the Texas Health and Safety Code § 343.011 in connection with the complaints of the Plaintiff herein and the Class members.

(A)    The condition of the Defendant, Union Pacific Railroad Company's sidetracks, which were effectively a jungle for want of maintenance and the clogged, blocked and

undersized culverts created a statutory public nuisance in violation of § 343.011(c), which prohibits maintaining a premises in such a manner that creates an unsanitary condition likely to attract or harbor mosquitoes, rodents, vermin (snakes, raccoons, possums and other wild creatures) or other disease-carrying pests; and

(B) Texas Health and Safety Code § 343.011(j) prohibits the filling or blocking of a drainage easement, failing to maintain a drainage easement, maintaining a drainage easement in a manner that allows the easement to be clogged with debris, sediment or vegetation.

(C) Chapter 343 of the Texas Health and Safety Code provides that a person who suffers damages as a result of a public nuisance is entitled to bring suit for their damages, plus attorney's fees and for the granting of a permanent injunction to abate and to prevent the recurrence of said public nuisance for which Plaintiff and the Class Action Plaintiffs sue.

(D) Defendant Union Pacific Railroad Company knew or should have known that rainwater flowing through the drainage basin for South Magnolia Street was being or would be diverted or impounded by the condition of its drainage system and culvert, and it permitted this diversion or impounding to occur and to continue to flood and hold water in violation of Tex. Water Code Ann. § 11.086, and Texas Health and Safety Code § 343.011, which constitutes a public nuisance and entitles Plaintiff to damages and injunction and the award of attorneys' fees.

### COMMON LAW NUISANCE- PUBLIC AND PRIVATE NUISANCES

102.    The Defendant's conduct described hereinabove interfered with the Plaintiff's interest by conduct that was negligent, intentional and unreasonable, and abnormal in areas populated by residents and businesses and its surroundings and it resulted in a condition that

substantially interfere with Plaintiff's private use and enjoyment of her land and that of the Class members.  The Defendant's conduct resulted in the loss of her property for which she sues individually and as representative of the Class. The injury to her property is permanent in nature and constitutes a taking of her house and real property.

103.  Plaintiff has a common-law standing to bring this suit and a statutory standing to bring this suit for the conduct of Defendant, which was a public nuisance. Conduct of the Defendant described herein above adversely affects Plaintiff and her neighbors and annoys and injures those who come within the scope of the standing water and the mosquitoes, disease and toxic waters that flood the Plaintiff's property and those of the Class members.  The conduct of the Defendant described herein above is continuous, repetitive and long-lasting.

104.  Defendant's negligent and grossly negligent conduct created a private and a public nuisance or condition that substantially interfered and continues to substantially interfere with the Plaintiff's use and enjoyment of their homes and property by causing an unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy such homes and property.

105.  Plaintiff knows that Defendant, Union Pacific Railroad Company has not changed its culvert and right of way maintenance practices or enlarged its culverts to accommodate the water flow from subsequent rainfall events.

### COUNT III- DECLARATORY JUDGMENT AND INJUNCTION

106.  Plaintiff requests that the Court issue a Declaratory Judgment and Injunction.  The Defendant's conduct constitutes negligence and created a nuisance, therefore, Plaintiff is entitled to a Mandatory Injunction directing Defendant, Union Pacific Railroad Company to remedy the water drainage issues alongside its tracks and berms by bringing the culverts into compliance.

32

## PROPERTY DAMAGE

107.  Plaintiff Cynthia Smalley owns a home which was damaged in the flood in question.

(A)  Plaintiff's damages, to rebuild her house, would be over $175,000.  Plaintiff's house and lot are worth $200,000. The conduct of the Defendant Union Pacific Railroad Company has effectively taken the Plaintiff's land and home away from her.

(B)  Plaintiff has or will suffer damages in the nature of a decrease in the fair market of her home and land and from the stigma which has attached to the property.

## DEMAND FOR JURY TRIAL

108.  The Plaintiff in this civil action request a trial by jury on all issues triable of right by a jury.

109.  This request is made under Local Rule CV-38 and Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

110.  WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for relief as follows:

(A)  An order certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff as Class Representative and her attorney as Class Counsel;

(B)  Awarding compensatory damages to Plaintiff and the members of the Class in an amount to be determined at trial;

(C)  Awarding exemplary damages to Plaintiff and the Class, and the subclasses;

(D)     Issuing a mandatory injunction to Defendant, Union Pacific Railroad Company, to

bring its culverts, drains, berms and track right of ways into compliance;

(E)     Awarding to Plaintiff and the Class their costs and attorneys' fees; and

(F)     Such other relief as may be just and proper.

Respectfully submitted,

LAW OFFICE OF CHARLES W. NICHOLS, PC

By: /s/ Charles W. Nichols
CHARLES W. NICHOLS
Texas Bar No. 14994200
Email:  cnichols@charleswnicholslaw.com
617 E. Lacy Street
Palestine, Texas 75801
Tel. (903) 729-5104
Fax. (903) 729-0347

## CERTIFICATE OF SERVICE

Defendant Union Pacific Railroad Company is hereby served with process in accordance

with Fed. R. Civ. P. 5(d) on April 30, 2018, via USPS certified mail and by personal service

through its registered agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas,

Dallas County, Texas 75201.

By:     /s/ Charles W. Nichols
        Charles W. Nichols