UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CYNTHIA SMALLEY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | Civil No. 18-cv-00180 |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS IN PART
THE FIRST AMENDED COMPLAINT**

Defendant Union Pacific Railroad Company ("Union Pacific") respectfully files this reply in support of its motion to dismiss in part the First Amended Complaint ("Complaint").

## INTRODUCTION

This Court should dismiss the allegations in the Complaint seeking to impose state and local duties on the design and maintenance of Union Pacific's interstate rail facilities. (ECF No. 13 at 3–9.) "Federal regulation of railroad operations has a long history in this country. Its purpose is to promote uniformity of such operations and expediency in commerce." *Texas Central Business Lines Corps v. City of Midlothiam*, 669 F.3d 525, 532 (5th Cir. 2012) (quotations and citation omitted). As this case illustrates, railroads cannot provide uniform and efficient freight service if, in addition to their federal duties, they also have to comply with a patchwork of conflicting state and local rules.

Federal law regulates railroad tracks and culverts. Plaintiff here improperly seeks to impose additional duties on top of those federal requirements. For example, federal regulations

set the terms under which railroads are to manage track elevation (49 C.F.R. § 213.63), but Plaintiff seeks to require Union Pacific to ensure that the embankment follow the natural fall line of the terrain (ECF No. 10 at ¶ 24.) Likewise, federal law requires the railroad to keep water away from the tracks and roadbed (49 C.F.R. §§ 213.31, .33), but Plaintiff alleges that Union Pacific may not use its property in a way that would "divert" water back "onto the Plaintiff's property" (ECF No. 10 at ¶ 72.) Federal regulations impose a duty to inspect track facilities "after" a severe storm (49 C.F.R. § 213.239), but Plaintiff alleges additional duties to inspect "before or during the rain storm" (ECF No 10 at ¶ 74.) And while federal regulations require Union Pacific to maintain drainage facilities to accommodate "expected water flow" (49 C.F.R. § 213.33), Plaintiff cannot allege that the water flow at issue was expected.[1] If Plaintiff were allowed to impose these duties on the railroad under common law, other landowners could impose similar or different duties on the same interstate facilities. Congress enacted the ICCTA to prevent precisely this type of patchwork of regulation. *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 914 N.W.2d 273, 281 (Iowa 2018).

Congress has provided in a related statute—the Federal Railroad Safety Act—that federal regulations promulgated by the Secretary of Transportation expressly preempt state duties on the same subject. 49 U.S.C. § 20106(a)(1). A party may proceed if and only if she alleges a violation of the Federal standard of care. 49 U.S.C. § 20106(b). Here, Plaintiff does not explicitly rely upon the breach of federal duties as the basis for her negligence claim. She instead alleges that

---

[1] She instead seeks to require that Union Pacific have capacity for a historical deluge dropping 5–6 inches of rain in the span of about two hours—i.e., *unexpected* water flow. ECF No. 10 at ¶ 17. On April 30, 2016, the Mayor of Palestine signed an emergency declaration and released this statement: "The City of Palestine has suffered the worst flooding event in my 59 years of living here.  I don't recall ever seeing this much water rise so fast and in such a short period of time." This statement is capable of judicial notice as a public record. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 20017) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

Union Pacific "violated common law duties, city ordinances, and legislative enactment"—none of which are federal regulations (ECF No. 10 at ¶ 67.) Moreover, the Complaint does not separately identify the factual allegations that might support a violation of the federal regulations. As a result, Counts I and II should be dismissed with instructions to plead separately the violations, if any, of federal regulations. Those allegations in Count I and II based on state or local duties should be dismissed with prejudice.

Plaintiff's Takings claims also are meritless. Union Pacific is not a state actor and was not exercising any state eminent domain powers through its actions at issue here. Moreover, Plaintiff's claims sound in tort and do not constitute a valid takings claim. The Court should dismiss Counts III and IV.

## ARGUMENT

### I.    Federal Law Preempts Design and Maintenance Standards Relating to Railroad Tracks and Culverts

Plaintiff admits that ICCTA preempts state duties relating to the design of the railroad's embankment and the adequacy of the culverts under tracks. (ECF No. 17 at 5.) She nevertheless asserts that her Complaint raises only maintenance claims—as opposed to design claims—and that ICCTA does not preempt maintenance claims. (*Id*. at 4–5.) Plaintiff is wrong on both points.

First, Plaintiff *does* include design claims on the face of her Complaint. For example, Plaintiff alleges that Union Pacific's property is required to maintain a relationship with "the natural fall line" of the topography.[2] Since Union Pacific's nearly century-old embankment is

---

[2] Plaintiff asserts that Union Pacific could "build the berm for the tracks to the height necessary and manage the runoff water by maintaining the natural fall line of the topography and constructing culverts necessary to divert the water along the fall line of the berms holding up its tracks." (ECF No. 10 at 7 ¶ 24.) Plaintiff also complains about Union Pacific's embankment impounding the surface rainwater (ECF No. 10 at ¶ 72), but the water will be impounded simply based on the fact that the 25-foot embankment is there.

25-feet high, the only way to impose this relationship now would be to change the change the design of the embankment. (ECF No. 10 at 7 ¶ 24.) Plaintiff also relies on City of Palestine Ordinance 40–152, which imposes pre-approval design requirements on drainage facilities. (ECF No. 10 at 15–16 ¶¶ 53–55.)[3]

Second, there is a strong line of authority holding that ICCTA preempts maintenance standards for rail facilities. As the Surface Transportation Board, the expert federal agency, explained, "state and local regulation of actions based on the railroad's design, construction, and maintenance standards for railroad track are preempted under [49 U.S.C. § 10501(b)]." *Thomas Tubbs – Petition for Declaratory Order*, Docket No. FD 35792, 2014 WL 5508153, at *4 (Oct. 31, 2014), *aff'd sub nom Tubbs v. Surface Transp. Bd.*, 812 F3d 1141, 1146 (8th Cir. 2015). The federal district courts within the Fifth Circuit uniformly agree. *See, e.g.*, *Union Pacific v. Taylor Truck Line, Inc.*, No. 15-0074, 2018 WL 1750516, at *9 (W.D. La. Apr. 10, 2018) ("The Court finds that the Taylor Entities' comparative negligence defense based on Union Pacific's construction, repair, or maintenance of the Crossing is preempted under the ICCTA."); *Waneck v. CSX Corp.*, No. 1:17cv106-HSO-JCG, 2018 WL 1546373, at *4–6 (S.D. Miss. Mar. 29, 2018) (finding preemption of tort claims relating to the design and maintenance of the crossing and related rail structures); *Pere Marquette Hotel Partners, L.L.C. v. United States*, No. 09–5921, 2010 WL 925297, at *1 (E.D. La. Mar. 10, 2010) (granting Rule 12(b)(6) motion to dismiss on maintenance and design claims). Other courts have reached the same conclusion. *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 843 (E.D. Ky. 2004) (because "the drainage problem . . . [was] allegedly being caused by the construction and/or maintenance of the tracks and crossings themselves," ICCTA preempts the state law claims), *aff'd*, No. 04–5448 (6th Cir. Feb. 7, 2005);

---

[3] For the Court's convenience, a copy of the Ordinance is attached as an addendum to this reply.

*Griffioen*, 914 N.W.3d at 278 ("we conclude this tort action seeking a large sum of damages for flooding allegedly caused by the railroads' maintenance of their rail bridges is preempted").

As this precedent confirms, the imposition of state maintenance standards unreasonably burdens railroad operations, just as design claims do. Indeed, maintenance claims are often inextricably tied to the design of the roadbed. As Plaintiff acknowledges in her complaint, more rigorous maintenance was required "to prevent flooding" in this case due to the "type of [roadbed] construction[.]" (ECF No. 10 at 7 ¶ 25.) Thus, the maintenance of the embankment and the culvert are part of "transportation by rail carriers" and subject to ICCTA preemption. *See* 49 U.S.C § 10501(b).

Even if the ICCTA does not preempt maintenance claims, the Federal Railroad Safety Act does. 49 U.S.C. § 20106.  (ECF No. 13 at 8.) Section 20106 provides that, once the Secretary of Transportation has promulgated federal regulations relating to rail safety, any state or local requirement on the same subject matter is expressly preempted. 49 U.S.C. § 20106(a); *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 357−58 (2000); *CSX v. Easterwood*, 507 U.S. 658, 662 (1993). A negligence claim is permitted only to the extent that a party alleges the violation of a *federal* regulatory duty. 49 U.S.C. § 20106(b). As Plaintiff acknowledges on the face of the Complaint, the Department of Transportation has issued regulations covering the subject of this dispute—maintaining and inspecting culverts. (ECF No. 10 at 12–13.) These regulations dictate *when* inspections should occur, *who* should conduct the inspections, and *what* the maintenance standards are. *See id*. Federal regulations also effectively set the terms under which the railroads "are to manage track elevation." *Plasser American Corp. v. Burlington Northern*, No.

3:06CV00095 JLH, 2007 WL 4410682 (E.D. Ark. Dec. 14, 2007) (citing 49 C.F.R. § 213.63). Thus, the Federal Railroad Safety Act also preempts the state and local duties alleged here.[4]

The cases cited by Plaintiff are distinguishable. *See* ECF No. 17 at 5–6, citing *MD Mall Associates, LLC v. CSX Transp.*, 715 F.3d 479 (3d Cir. 2013) and *Emerson v. Kansas City S. Ry.*, 503 F.3d 1126 (10th Cir. 2007). The Third Circuit's *MD Mall* opinion did not address ICCTA preemption, leaving the issue for the district court on remand.[5] The district court recognized on remand that "district courts in other circuits have held that state tort claims seeking redress for flooding caused by a railroad's construction and maintenance of its tracks and roadbed are expressly preempted" under the ICCTA. *MD Mall Associates v. CSX Transp.*, 288 F. Supp. 3d 565, 595 n.30 (E.D. Pa. 2017). However, the *MD Mall* district court declined to follow that precedent since the Third Circuit had not adopted the same approach to ICCTA preemption. *Id.* at 595. In contrast, the Fifth Circuit *has* adopted this approach to express ICCTA preemption. (ECF No. 13 at 6–9.)

Moreover, *MD Mall* concerned an earthen berm built for the neighbor's benefit; the berm did not have a rail transportation purpose. *MD Mall*, 713 F.3d at 483; *see also id* at 501 (providing a picture of the earthen berm). The culverts at issue here do have a rail transportation purpose, and Plaintiff does not disagree. (ECF No. 13 at 5–8.)

---

[4] *See Federal Insurance Company v. Burlington Northern*, 270 F. Supp. 2d 1183, 1187-88 (C.D. Cal. 2003) ("the maintenance, repair, and inspection of track conditions is directly and comprehensively covered by the FRSA"); *Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*, 529 F.3d 794, 796 (8th Cir. 2008) (similar); *Harris v. Norfolk S. Ry. Corp.*, No. 2:11-cv-00497, 2012 WL 6209164, at *6-9 (S.D. W. Va. Dec. 13, 2012) (FRSA preempts internal railroad rules relating to track maintenance), *rev'd in part on other grounds,* 784 F.3d 954 (4th Cir. 2015).

[5] *See MD Mall*, 715 F.3d at 485 n.5 (explaining that the district court did not reach the question of ICCTA preemption); *see id.* at 496 n.14 ("we leave it to the District Court on remand to address, if necessary, CSX's additional argument that MD Mall's claims are preempted under the ICCTA").

*Emerson v. Kan. City R. Ry.*, 503 F.3d 1126 (10th Cir. 2007) involved a "floodplain drainage ditch . . . *adjacent* to a portion of the Railroad's track." *Id*. at 1128 (*emphasis added*). "The Landowners allege[d] that when the Railroad replaced old, deteriorated wooden railroad ties, it regularly discarded the used rails in the drainage ditch." *Id.* The Tenth Circuit held that "no ICCTA provision gives the [Surface Transportation Board] authority to dictate how the Railroad should dispose of detritus or maintain drainage ditch vegetation. Nor would the state remedies adversely affect the economic aspects of the Railroad's operations subject to [the Board's] control." *Id.* at 1132.

Here, by contrast, Plaintiff complains about maintenance standards applicable to the railroad embankment and a culvert supporting the tracks. As the courts have explained, these facilities are related to rail transportation services and thus subject to the exclusive jurisdiction of the Surface Transportation Board. (ECF No. 13 at 5–6.)[6] The imposition of state duties on these interstate facilities would adversely affect railroad operations. *See Tubbs*, 812 F.3d at 1144 (distinguishing *Emerson* because "this case deals with the structural standards applicable to an earthen embankment on which a railroad runs, standards that would have a significant impact on the construction and maintenance of a rail line").

In short, Counts I and II should be dismissed with instructions to plead separately the violations, if any, of federal regulations. The allegations in Count I and II based on state or local duties (including the violation of internal rules) should be dismissed with prejudice.

---

[6] *See also Friberg v. Kansas City Southern Railway Company*, 267 F.3d 439, 443-44 (5th Cir. 2001)("The language of the [ICCTA] statute could not be more precise, and it is beyond peradventure that regulation of KCS train operations, as well as the construction and operation of the KCS side tracks, is under the exclusive jurisdiction of the STB . . ."); *Texas Central Business Lines v. City of Midlothian*, 669 F.3d 525, 533 (5th Cir. 2012) (holding that the ICCTA grants "exclusive jurisdiction" over the operation of rail tracks to the STB, "***leaving no room for local regulation***") (emphasis added).

## II.    The Court Should Dismiss Counts III and IV of the Complaint Because There Is No State Action Alleged.

The Court should dismiss Counts III and IV in their entirety and with prejudice. On the facts presented in the Complaint, Plaintiff does not allege an unconstitutional taking. As Union Pacific pointed out in its Motion, the threshold issue is whether Plaintiff's property has been taken by "state action." (ECF No. 13 at 9–10.) Union Pacific is not a state actor, and it did not invoke the eminent domain powers of the state under Tex. Transp. Code §112.052. That is, no interest in Plaintiff's property was "declared for and charged with public use." (ECF No. 17 at 7.)

As Plaintiff admits, state action can be found only when the actions are fairly attributable to the State." ECF No. 17 at 9, *quoting American Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999). Plaintiff discusses at length the facts of the *Daniels* case, but misses the underlying legal principle:

> [T]here can be no violation of the Constitution without state action  . . . and "state action requires . . . that the party charged with the deprivation must be a person who may fairly be said to be a state actor." * * * Typically, government "can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must, in law be deemed to be that of the State."

*Daniels v. Union Pacific R.R.*, 480 F. Supp. 2d 191, 197 (D. D.C. 2007) (citing *American Manufacturers Insurance* and other U.S. Supreme Court cases). Here, there is no allegation that the State of Texas has exercised coercive power or provided significant encouragement.

Even if Union Pacific were a state actor, the Complaint fails to allege a deprivation of property with sufficient completeness to be a "taking." The Supreme Court case cited in the Opposition (ECF No. 17 at 7) does not authorize suit for the type of occasional flooding alleged here. In that case, there was no question that the Government, by building a dam, had affected a "permanent flooding" of the landowners' property. *United States v. Dickenson*, 331 U.S. 745,

8

747, 750 (1947). In that context, the landowners were allowed to recover for the erosion of the banks as well. *Id.* at 750. Here, they are not entitled to that leeway, since the Complaint does not and cannot allege come close to alleging that their property was "permanently flooded."

Union Pacific pointed out that there is abundant case law holding that a negligent failure to avoid unlawful flooding is, at most, a tort, and not a "taking." (ECF No. 13 at 10). Plaintiff responds that the cited cases "all turn on the foreseeability of the damage caused by the complained of acts." (ECF No. 17 at 10). But foreseeability is a prerequisite to a valid tort claim; it is not enough for a "taking" claim. For a "taking," the plaintiff must allege (1) affirmative action by the government (2) undertaken with intention to take private property. Plaintiff fails both tests.

First, there can be no taking based on a negligent omission as compared with affirmative government action. As one court summarized:

> [W]e agree with the [defendant] Village that the failure to act on this information cannot form the basis for [the plaintiff's] takings claim. Our conclusion rests in part on federal authority . . . requiring a valid takings claim to include allegations of affirmative government action.

*Fromm v. Vill. Of Lake Delton,* 847 N.W.2d 845, 852 (Wisc. Ct. App. 2014) (citations omitted). "In no case that we know of has a governmental agency's failure to act or to perform its duties correctly been ruled a taking." *Sunflower Spa LLC v. City of Appleton*, 2015 WL 4276762 (E.D. Wisc. 2015) (quotation and citation omitted). Here, putting aside the lack of government involvement, Plaintiff alleges only inaction—a failure to maintain the culvert—not the affirmative action required for a "taking."

Second, a "taking" requires intentional conduct on the part of the governmental actor. The Texas Supreme Court has explained:

> We have held that the government's "mere negligence which eventually contributes to the destruction of property is not a taking"; rather, the government

must act intentionally. . . . [A] governmental entity acts intentionally if it knows either "that a specific act [was] causing identifiable harm" or "that the specific property damage [was] substantially certain to result from" the act.

*City of San Antonio v. Pollock*, 284 S.W.3d 809, 820-21 (Tex.) (footnotes omitted).

"[F]oreseeability—a classic negligence standard—is a far cry from intent or authorization."

*Sunflower Spa LLC*, 2015 WL 4276762 at *2. Thus, Plaintiff in this case should not be permitted to turn preempted tort claims into constitutional ones. Counts III and IV should be dismissed with prejudice.

## CONCLUSION

This Court should grant this motion to dismiss in part, and grant other relief it deems just and appropriate. Union Pacific requests 20 days after this Court rules on this motion to file its Answer or Rule 12(e) motion.

Respectfully submitted,

*/s/  John W. Proctor*
John W. Proctor
Texas Bar No. 16347300
Brown, Dean, Wiseman, Proctor, Hart & Howell, LLP
306 West 7th Street, Suite 200,
Fort Worth, Texas 2427
(817) 332-1391

ELIZABETH A. GRAHAM
State Bar No. 24104570
Union Pacific Railroad Company
24125 Old Aldine Westfield Road
Spring, TX 77373
Email: eagrahm@up.com
Telephone:  (281) 350-7660

ATTORNEYS FOR DEFENDANT,
UNION PACIFIC RAILROAD COMPANY

10

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 13, 2018.

ELIZABETH A. GRAHAM

ADDENDUM
CITY OF PALESTINE ORDINANCE 40-152

Drainage/floodway easements

The developer shall provide drainage easements along all natural and manmade
drainage channels and floodways which drain two or more lots or tracts of land
according to the following criteria:

    (1) Natural (open) drainage channels. The developer shall provide public storm
drainage easements along existing or proposed open drainage channels with
sufficient width for the water course to handle the flow from the designated
frequency storm as provided in sections 40-222 and 40-223 and to allow for
adequate side slopes plus a minimum of 20 feet on each side of the channel for
ingress and egress of maintenance equipment

    (2) Enclosed drainage systems. Where enclosed drainage systems are provided
that are not within or adjacent to a public street right-of-way, the developer shall
provide storm drainage easements of 20-foot minimum width. Easements shall be
centered on the system. If necessary, the developer shall provide larger easements.

    (3) See also article IX of this chapter.

Floodplain Restriction

No construction, without the written prior approval of the city shall be allowed within
a floodplain, and then only after detailed engineering plans and studies show that no
flooding and no obstruction to the natural flow of water will result. If construction is
permitted, all finished floor elevations shall be a minimum of one foot above the 100-
year flood elevation.

The existing creeks, lakes, reservoirs or drainage channels, not within a public
easement, traversing along or across portions of this subdivision, shall remain as an
open channel at all times and shall be maintained by the individual owners of the lots
that are the individual owners of the lots that are traversed by or adjacent to the
drainage courses along or across such lots. The city shall not be responsible for the
maintenance and operation of such private drainageways or for the control of erosion.
Each property owner shall keep the natural drainage channels traversing or adjacent
to the property clean and free of debris, silt or any substance which would result in
unsanitary conditions. The city shall have the right of ingress and egress for the
purpose of inspection and supervision of maintenance work by the property owner
and to alleviate any undesirable conditions that may occur. The natural drainage
channels are subject to stormwater overflow and natural bank erosion to an extent that
cannot be definitely defined, the city shall not be liable for damages of any nature
resulting from the occurrence of these natural phenomena, nor resulting from a failure
of any structures within the natural drainage channels. The natural drainage channel
crossing each lot is shown by the floodplain easement line as shown on the plat.

(Ord. No. O-42-07, § I, 9-24-2007)